[No. 9889-3-III.   Division Three.   April 26, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. WARREN EARL THOMPSON, *Appellant*.

*Rick L. Hansen* and *Rakow & Hansen,* for appellant (appointed counsel for appeal).

*Gerald A. Matosich, Prosecuting Attorney,* and *Richard Petersen, Deputy,* for respondent.

MUNSON, C.J.—Warren Earl Thompson appeals his conviction for two counts of delivery of a controlled substance, cocaine. He contends the court erred in failing to grant his motion to dismiss based on a violation of his right to a speedy trial. We affirm.

On July 6, 1988, the State filed a 2-count information charging Mr. Thompson with delivery of a controlled substance, cocaine.[1] On the same day, a warrant was issued for his arrest. At the time, he was incarcerated in the Chelan County Jail, serving a 98-day sentence on an unrelated conviction. The Klickitat County Sheriff's Office learned of Mr. Thompson's incarceration and teletyped the warrant to the jail requesting he be placed on hold.

On September 7 at the expiration of his sentence, Mr. Thompson was transferred to the Klickitat County Jail and

---

[1]The charged crimes were based on two controlled buys made from a police informant. On two separate occasions, December 14 and 21, 1987, Mr. Thompson went to the house of Mark Sales, a police informant working as an undercover agent, and sold him ¼ gram of cocaine for $25.

served with a copy of the warrant on the current charge. His preliminary appearance was held on September 19. He was arraigned on September 29, at which time he entered a plea of not guilty to both counts. He was thereafter released from custody.

On November 28 a notice of trial date was filed, setting the trial for December 20. Mr. Thompson then sought and was granted a continuance to take the deposition of the State's key witness. On December 12, a notice of trial date was filed, setting trial for January 5, 1989. On January 3, Mr. Thompson filed a motion to dismiss based on violation of speedy trial. The trial court heard and denied the motion the next day, finding he had waived his objections to the date of arraignment under CrR 3.3(e) and trial date under CrR 3.3(f). On January 6, he was found guilty by a jury on both counts of delivery of a controlled substance. His appeal is based on an alleged speedy trial violation.

Under CrR 3.3(c)(1), a criminal defendant detained in jail or subject to conditional release must be arraigned within 14 days of the filing of the information; if neither of these conditions is present, arraignment must be within 14 days of his first court appearance after the information is filed. Here, Mr. Thompson was not incarcerated for the current charge in the county where that charge was filed; he was serving a sentence in another county on an unrelated conviction. Such incarceration does not fall within the meaning of CrR 3.3(c)(1) to initiate the arraignment period from the date the information was filed. *See State v. Bernhard,* 45 Wn. App. 590, 599, 726 P.2d 991 (1986), *review denied,* 107 Wn.2d 1023 (1987). Accordingly, we look to whether Mr. Thompson was arraigned within 14 days of his first appearance and find he was; his first court appearance following the filing of the information was September 19, 1988, the date of his preliminary appearance. He was arraigned on September 29.

Even assuming Mr. Thompson was not arraigned within the 14–day period, he failed to raise a timely objection

under CrR 3.3(e).[2] The burden is placed on the defendant to monitor the time of arraignment. *Bernhard,* at 599. Thus, Mr. Thompson's objection is deemed waived under the rule.

CrR 3.3(c)(1) also deals with the time requirement for speedy trial. If a defendant is not released from jail on the pending charge, he must be brought to trial within 60 days of his arraignment. However, the rule provides that if a defendant is released from jail, the trial time is extended to 90 days after arraignment. As noted above, Mr. Thompson was released on the current charge after he entered his not guilty plea; thus under CrR 3.3(c)(1), he had to be tried within 90 days. His trial date was initially set for December 20, which is within the 90–day limit. A second trial date was set following a defense request for a continuance. Under CrR 3.3(g)(3) and (h), delays granted by the court for continuances are excluded in computing the time for trial. Accordingly, under a literal interpretation of the rule, Mr. Thompson was timely brought to trial.

Mr. Thompson asserts the applicability of the CrR 3.3 time requirements when there exists a delay between the filing of the information, his preliminary appearance, and the arraignment. *State v. Striker,* 87 Wn.2d 870, 877, 557 P.2d 847 (1976). When such delay is present, the court may hold the time period for trial commences upon the filing of the information. This "constructive arraignment date" for initiating the speedy trial limits has been traditionally

---

[2]CrR 3.3(e) provides:

**"Objection to Arraignment Date—Waiver of Objection.** A party who objects to the date of arraignment on the ground that it is not within the time limits prescribed by this rule *must state the objection to the court at the time of the arraignment.* If the court rules that the objection is correct, it shall establish and announce the proper date of arraignment pursuant to section (c) of this rule, and the time for trial set out in section (c) shall be deemed to have commenced on that date. *Failure of a party to object as required shall be a waiver of the objection, and the date of arraignment shall be conclusively established as the date upon which the defendant was actually arraigned.*" (Italics ours.)

referred to as the *Striker* rule.[3] Thus under the present fact pattern, the time period for trial would run from July 6, 1988, the date the information was filed, rather than September 29, the date Mr. Thompson was arraigned. Since he was not provided a trial within this constructive 90–day limit, the prosecution should have been dismissed.

Our review of the case law in this area reveals divergent and often conflicting interpretations of CrR 3.3 based on differing versions of the rule throughout the years.[4] The *Striker* rule was adopted to fill a hiatus in CrR 3.3 which failed to deal with this potential time lag between the filing of the information and the time a defendant was ultimately brought before the court. Although the rule at first blush appeared to yield harsh results since dismissal with prejudice remained the sole remedy, it was fairly balanced by former portions of the rule which excluded from the speedy trial calculations the periods of delay resulting from the defendant's absence and during which period he was not amenable to process.[5] *Striker,* at 871. A subsequent amendment to the rule attempted to further clarify this exception. Former CrR 3.3(f) provided:

> If and in event the defendant is absent and thereby unavailable for trial or for any pretrial proceeding at which his presence is required, the time period specified in section (b) or (c) shall start to accrue anew upon the defendant's being actually

---

[3] "[W]here, contrary to the expectation expressed in the rules, a delay has occurred between the filing of the information and the bringing of the accused before the court, CrR 3.3 must be deemed to operate from the time the information is filed." *Striker,* at 875. The term "constructive arraignment date" was recently coined by the court in *State v. Miffitt,* 56 Wn. App. 786, 791, 785 P.2d 850 (1990).

[4] Compare, *e.g., State v. Hunnel,* 52 Wn. App. 380, 760 P.2d 947 (1988); *State v. Hanson,* 52 Wn. App. 368, 760 P.2d 941, *review denied,* 111 Wn.2d 1030 (1988); *State v. Baxter,* 45 Wn. App. 533, 726 P.2d 1247 (1986), *overruled in State v. Hanson, supra.*

[5] Former CrR 3.3(d) provided in relevant part:
"The following periods shall be excluded in computing the time for trial:
". . . .
"(5) Delay resulting from the absence of the defendant."

present in the county wherein the criminal charge is pending, and his presence appearing upon the record of the court.

Interpreting this amended version of CrR 3.3, the court in *State v. Peterson,* 90 Wn.2d 423, 585 P.2d 66 (1978) determined this requirement placed a burden on the State to demonstrate the presence of good faith and diligent effort to obtain the defendant's availability. Where the defendant's whereabouts were known by the State, he could not be considered unavailable within the contemplation of the rules.

In 1980, the rule was amended to its current form. The unavailability exception was deleted, and the current list of excluded periods adopted.[6] Despite the alteration of the rule, appellate courts have split on the continuing validity of the unavailability analysis and the accompanying good faith and due diligence requirement. Compare *State v. Miffitt,* 56 Wn. App. 786, 785 P.2d 850 (1990); *State v. Hunnel,* 52 Wn. App. 380, 760 P.2d 974 (1988); *State v. Hanson,* 52 Wn. App. 368, 760 P.2d 941, *review denied,* 111 Wn.2d 1030 (1988); *State v. Nelson,* 47 Wn. App. 579, 736 P.2d 686, *review denied,* 108 Wn.2d 1024 (1987); *State v. Holien,* 47 Wn. App. 124, 734 P.2d 508 (1987); *State v. Baxter,* 45 Wn. App. 533, 726 P.2d 1247 (1986), *overruled*

---

[6]CrR 3.3(g) currently provides:

"The following periods shall be excluded in computing the time for arraignment and the time for trial:

"(1) All proceedings relating to the competency of a defendant to stand trial, terminating when the court enters a written order finding the defendant to be competent;

"(2) Preliminary proceedings and trial on another charge except as otherwise provided by CrR 3.3(c)(5);

"(3) Delay granted by the court pursuant to section (h) [continuances];

"(4) The time between the dismissal of a charge and the defendant's arraignment or rearraignment in superior court following the refiling of the same charge;

"(5) Delay resulting from a stay granted by an appellate court;

"(6) The time during which a defendant is detained in jail or prison outside the state of Washington or in a federal jail or prison and the time during which a defendant is subjected to conditions of release not imposed by a court of the State of Washington;

"(7) All proceedings in juvenile court."

*in State v. Hanson, supra; State v. Allen,* 36 Wn. App. 582, 676 P.2d 501 (1983).

Based on the evolution of the court rule, we find the unavailability exception has been abrogated and is no longer applicable under CrR 3.3. However, as the *Miffitt* court determined, the "good faith" requirement has not completely vanished from the speedy trial inquiry. Under CrR 4.1(a), which requires the defendant be "promptly" arraigned after the information has been filed, the State must demonstrate that delay between the filing of the information and the defendant's first appearance was reasonable under the circumstances. With this analysis in mind, we look to the factual situation at bar.

In considering the reasonableness of the delay, we appraise the State's actions in light of its knowledge and alternatives. This is not a case where the sheriff went to the accused's last known address, failed to find him, thus could not serve the warrant and upon returning to the sheriff's office filed the warrant away. Rather, Chelan County was notified of the pending Klickitat County warrant and provided information on the duration of Mr. Thompson's sentence. As soon as the Chelan County sentence was completed, Mr. Thompson was transported to Klickitat County for resolution of the pending charges.[7] While admittedly the county could have requested Mr. Thompson serve his Chelan County sentence in Klickitat County, we find its failure to pursue this avenue does not necessarily constitute bad faith.

The delay present here was reasonable, given its limited duration and the rationale behind it. To clarify, when an accused is serving a brief sentence in one county

---

[7]The State Highway Mileage Chart (1980) indicated it is 178 miles between Wenatchee, the county seat of Chelan County, to Goldendale, the county seat of Klickitat County. We will take judicial notice that about 56 miles of this distance is via a 4–lane interstate highway.

when an information is filed in another county on an unrelated charge, the delay between the filing of the information and the accused's subsequent arraignment is not so unreasonable as to violate the prompt arraignment rule of CrR 4.1.

Even assuming there existed a speedy trial issue, the trial court in ruling on this argument determined Mr. Thompson waived his objection by failing to timely raise it. We agree.

CrR 3.3(f) provides in relevant part:

> **Setting of Trial Date—Notice to Parties—Objection to Trial Date—Waiver.**
> (1) The court shall, within 15 days of the defendant's actual arraignment in superior court, set a date for trial which is within the time limits prescribed by this rule, and notify counsel for each party of the date set. If a party is not represented by counsel, the notice shall be given to the party, and may be mailed to the party's last known address. The notice shall set forth the proper date of the defendant's arraignment as established at the time of arraignment, the date set for trial and the number of days which will elapse before the trial date. *A party who objects to the date set upon the ground that it is not within the time limits prescribed by this rule must, within 10 days after the notice is mailed or otherwise given, move that the court set a trial within those time limits. Failure of a party, for any reason, to make such a motion shall be a waiver of the objection that a trial commenced on such date, or on an extension of such date properly granted pursuant to this rule, is not within the time limits prescribed by this rule.*

(Italics ours.)

■ It is uncontested Mr. Thompson failed to object to the trial date before seeking a continuance. Counsel asserts he was unaware until shortly before trial that Mr. Thompson was incarcerated in the Chelan County Jail and that the objection was made as soon as he acquired this knowledge. We find this argument unpersuasive. Counsel must be charged with the knowledge he can readily acquire from his client. He was present at arraignment and a primary theory of defense at that stage is a potential speedy trial problem. He need only have briefly questioned his client to acquire

sufficient information to raise the objection. His failure to do so precludes a subsequent attempt on appeal.

We find no abuse of discretion in denying Mr. Thompson's motion to dismiss.

In a pro se supplemental brief filed subsequent to oral argument, Mr. Thompson raises additional issues that require addressing here.

First, Mr. Thompson attempts on appeal to attack the credibility of the State's key witness. The credibility of witnesses is an issue for the jury. We find no error.

Second, he asserts there was insufficient evidence to support his conviction. The primary focus of this contention revolves around a mistaken identity claim. He asserts a man named "James" more closely fits the description of the individual committing the crime than himself; he also points to the lack of fingerprint identification to support the conviction.[8] We find these arguments unpersuasive. The State presented testimony from the informant conducting both controlled buys from Mr. Thompson. This evidence alone was sufficient to support the convictions for delivery of controlled substances.

Third, Mr. Thompson requests a retrial due to the unavailability of a defense witness. Under CrR 7.6(a)(3), the court may grant a new trial based upon "[n]ewly discovered evidence material for the defendant, which he could not have discovered with reasonable diligence and produced at the trial". Mr. Thompson admits that he was aware at the time of trial this witness would be important to his case. He further acknowledges he acquired a written statement from him and that no subpoena was requested or issued for this witness until after the trial was initiated. By that time, the defense was unable to secure the witness. We find based on this evidence that a new trial is not appropriate under CrR 7.6(a)(3). The defense was aware of this witness prior to

---

[8]Mr. Thompson argues that although an expert for the State testified regarding fingerprints found on one of the bindles, he did not indicate the fingerprint was Mr. Thompson's. This is an issue for cross examination.

trial and could have made a greater attempt to secure his testimony.

The conviction is affirmed.

THOMPSON and SHIELDS, JJ., concur.

Review granted at 115 Wn.2d 1008 (1990).